## KRILL v. ARMA CORPORATION.
### Civ. No. 7569.

District Court, E. D. New York.
Feb. 26, 1948.

Harry Teichner, of Brooklyn, N. Y., for plaintiff.

Crawford & Reed, of New York City (Alfred T. White and John M. Burke, both of New York City, of counsel), for defendant.

GALSTON, District Judge.

On December 31, 1946 the plaintiff filed the complaint in this action alleging that he was proceeding under Sec. 16(b) of the Fair Labor Standards Act of 1938, U.S.C.A. Title 29, § 201 et seq., to recover overtime compensation and an equal amount as liquidated damages. It is al-

leged that the defendant was engaged in the manufacture and production of fire control and navigational instruments and equipment for interstate commerce, and that a substantial portion of the goods manufactured was made up of raw materials shipped to the defendant's plant in New York from points outside the state. It is also alleged that substantially all of the goods thus manufactured and delivered in interstate commerce were pursuant to contracts between the defendant and the Government of the United States for delivery to the United States Navy. The plaintiff alleges that from on or about December 15, 1941 to November 24, 1945 defendant employed the plaintiff to perform duties which were essential to the production and completion of those goods and that the plaintiff was thus employed as an assistant to a senior development engineer. It is alleged that during that period the plaintiff was employed for work weeks longer than the applicable maximum number of hours as provided under Sec. 7 of the Fair Labor Standards Act, U.S.C.A. Title 29, § 207, and that the defendant failed to compensate the plaintiff for such excess work and has declined so to compensate him. The plaintiff seeks a judgment in the sum of $7,563.87.

The answer, after setting forth various denials, by way of additional defense alleges that the plaintiff was employed as an assistant to a senior development engineer, and that the performance of the work of the plaintiff involved the use of the plaintiff's academic education in the physical sciences and higher mathematics, and his training or experience in the application of such knowledge to research and engineering development problems of varied natures, while admitting that the plaintiff was compensated on a salary basis of not less than $30 per week during the period from December 15, 1941 to October 5, 1942, and on a salary basis of not less than $200 per month during the period from October 5, 1942 to the termination of his employment on November 25, 1945.

In consequence the plaintiff's claim for overtime compensation is vigorously contested on a number of grounds, among others that the plaintiff was not an employee engaged in commerce or in the production of goods for commerce, and consequently was not within the jurisdiction of the Fair Labor Standards Act; also that the plaintiff was engaged in a bona fide professional, executive and administrative capacity and was not covered by that act. Finally that the Portal-to-Portal Act, 29 U.S.C.A. § 251 et seq., exonerates the defendant of liability in view of the facts in this case.

The facts are all important. Was the plaintiff performing service in interstate commerce? The record discloses that he was employed as an assistant to a senior development engineer; that the latter was in charge of research and engineering projects related to the business of the defendant. During the period of the plaintiff's employment the defendant was engaged in research, development and production of special precision ordnance and navigation instruments which were used on combat war vessels of the United States Navy, under contracts with the United States Navy. Defendant had its plant at the Bush Terminal in Brooklyn in the State of New York, and under the terms of its contracts with the United States Navy, all of the equipment thus manufactured was turned over to the Navy at that plant for inspection and acceptance by the United States Navy. Transportation from that plant was effected by the Navy, with the exception of a small percentage of the production of the defendant, amounting in all to less than 4% of its total manufacture. The latter consisted of components of ordnance equipment, developed and produced by the defendant under direct contracts with the United States Navy, and which at the direction of the United States Navy the defendant shipped across state lines to two other contractors of the Navy, the Submarine Signal Company and the Westinghouse Electric Elevator Company.

Thus it would seem that the entire production of the defendant during the period in question was for the use and benefit of the United States Navy, and that 96% thereof at least remained at the plant of the defendant until it was accepted by the

United States Navy. The title passed to the Navy while the goods were thus in the plant of the defendant in the State of New York. Whether the defendant, in view of the facts recited, was engaged in interstate commerce during the period of the plaintiff's employment is not for the purposes of this case necessary to determine.[1]

■ For the plaintiff to be within the coverage of the Act depends upon his own activities, not upon the nature of his employer's business: Laudadio v. White Construction Co., Inc., 2 Cir., 163 F. 2d 383, citing Overstreet v. North Shore Corporation, 318 U.S. 125, at page 132, 63 S.Ct. 494, 87 L.Ed. 656; also McLeod v. Threlkeld, 319 U.S. 491, at page 497, 63 S.Ct. 1248, 87 L.Ed. 1538. The duties performed by the plaintiff while in the employ of the defendant were described by Foss and Cunningham. He entered the employ of the defendant on December 14, 1941, having been hired by Foss. After having been questioned by Foss as to his past experience, technical ability and general suitability for that position, he was assigned to work as a junior development engineer. Krill was told that the work week was considered to be forty hours, but that due to the emergency, overtime work would probably be required, and in that event would be paid for on a pro rata basis. He was to report at 8:30 a. m. and the day's work would be over at 5:06 p. m. on days of regular work. The plaintiff was assigned as an assistant to E. W. Pritchard, who was doing general research and development engineering on naval instruments. The plaintiff had no work to do in connection with the manufacturing of the instruments, nor did he perform such work. Men were assigned to Krill in connection with his work to aid in the mechanical and electrical work required in the construction of experimental models and testing equipment. These assistants were classified as mechanics and wiremen. The defendant's records concerning Krill and his work indicate that in addition to what has heretofore been described, he performed mathematical calculations, applying a knowledge of physical sciences to problems of design and related subjects. Moreover, at times he assisted in the preparation of proposed patent aplications.

From the testimony of Foss and Cunningham on behalf of the defendant, and indeed from that of Krill himself, there remains no doubt that he was employed as a professional engineer, and performed services as such throughout the period of his employment. Shedding light also on the professional nature of the plaintiff's activities is the file of the Selective Service Board. It abundantly discloses that he was a professional engineer while employed by the defendant.

During the period of his employment the defendant received a basic salary of $35 per week from December 14, 1941 to March 20, 1942. From March 22, 1942 to June 19, 1942 he received a basic salary of $40 per week. From June 21, 1942 to October 9, 1942 he received a basic salary of $45 per week. From October 11, 1942 to January 17, 1943 he received a basic salary of $49.50 per week, and from January 19, 1943 until the termination of his employment he received a minimum of $54.50 per week basic salary.

■ The benefits of the Act affecting maximum hours of work are set forth in U.S.C.A. Title 29, § 207, subject, however, to the exemptions defined in Sec. 213, which list among exemptions an employee in a bona fide professional capacity. To succeed Krill must show that he was engaged in commerce, or in the production of goods for commerce. The burden is upon him, see Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, at page 90, 63 S.Ct. 125, 87 L.

[1] As I read Divins et al. v. Hazeltine Electronics Corporation et al., 2 Cir., 163 F.2d 100, at page 102, it would certainly appear from the record in this case that such part of the defendant's production as went directly to the Navy, 96% as was testified to, was not in interstate commerce. The precision instruments so manufactured for gun fire control and navigation of naval vessels were not used on any cargo vessel. As to the remaining 4% of defendant's production, if such part was otherwise employed, there is no proof thereof, nor is there proof that the plaintiff participated substantially or otherwise therein. See also Crabb v. Welden Bros, 8 Cir., 164 F.2d 797.

Ed. 83; Schwarz v. Witwer Grocer Co., 8 Cir., 141 F.2d 341, 343. The nature of Krill's work has already been discussed. Plaintiff's counsel admitted at the trial that the plaintiff did not manufacture the product that went to the ships. Indeed there is no proof that he manufactured or assisted in the manufacture of goods that went into commerce. Defendant's witness Cunningham, a physicist engineer doing research and development work for the defendant, said that Krill assisted him during the latter years of Krill's employment in solving problems which his department had before it. He would give Krill a rough outline of what he wanted done and Krill proceeded to do experimental work. Cunningham said that generally speaking the work was that of an electrical engineer and had to do with a model of prototype amplifiers and other amplifiers. Cunningham testified:

"Well, I gave him extremely rough sketches, perhaps, showing the number of tubes, and possibly the type tube I thought would be suitable. However, he was at liberty to change that. Well, he selected the values of the resistors, capacitors and so on, required to make an amplifier out of that. * * *

"It was, I think, at that time perhaps the major project in the department."

Only a very small amount of Krill's work was mechanical in nature. Cunningham was asked: "Q. Doctor, is it or is it not necessary in research work of this general character to develop an ability to use your hands in a skilled way, and to know how these things are to be done? A. It is necessary. In fact engineering schools in general require men to take courses in shop work as part of their education as engineers."

The record does not disclose that any of the research or development work of the plaintiff was passed on to the production department for manufacture of the instrumentalities that had been the subject of his investigation. Certainly there is no proof that a substantial part of the employee's activities related to goods the movement of which went into channels of commerce. Kirschbaum v. Walling, 316 U.S. 517, 62

S.Ct. 1116, 86 L.Ed. 1638; also Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460. The plaintiff has the burden of proving that his work has a "close and immediate tie with the process of production". 10 East 40th Street Building, Inc., v. Callus, 325 U.S. 578, 65 S.Ct. 1227, 1230, 89 L.Ed. 1806, 161 A.L.R. 1263; Fleming v. Post, 2 Cir., 146 F.2d 441, 158 A.L.R. 1384. In this circuit in Skidmore v. John J. Casale, Inc., 2 Cir., 160 F.2d 527, 530, the court said: "From this it would appear that while a minimal amount of production for shipment interstate will suffice for the purpose of classifying the employer, nevertheless it must be shown that the work of the individual employee which relates to the minimal amount, forms a substantial amount of all the work done by that employee."

██ It would seem to me that the plaintiff must fail because he was not engaged in commerce or in the production of goods for commerce within the meaning of the section of the Act.

 Finally it may be observed that the defense that the plaintiff was employed in a professional capacity meets all of the tests enumerated in the Appendix to the Fair Labor Standards Act, Title 29 U.S.C. A. § 541.3, except that for a period from December 14, 1941 to January 17, 1943 he did not receive a basic monthly salary of at least $200. It has been said in this circuit, in Stanger et al. v. Vocafilm Corporation, 2 Cir., 151 F.2d 894, 162 A.L.R. 216, that the employer has the burden of showing exemption. In the case at bar I think the defendant has met that burden by showing that Krill was engaged in work as defined in the subsections of Sec. 541.3, and was, therefore, professionally employed. However, if subdivision (B), in which the administrator sought to define a professional as one who must receive at least a salary of $200 a month, is valid, then the most Krill could be awarded would be for overtime covering the period from December 14, 1941 to January 17, 1943. It does seem to me though that such a wage prerequisite is an arbitrary and fanciful classification of professional status.

18

However, the complaint will be dismissed on the ground that Krill was not engaged in commerce, or in the production of goods for commerce.

With the filing of this opinion, appropriate findings of fact and conclusions of law will be filed.