### TORMEY v. KIEKHAEFER CORPORATION.
### Civ. No. 4340.

District Court, E. D. Wisconsin.
March 8, 1948.

N. Paley Phillips and Lee K. Beznor, both of Milwaukee, Wis., for plaintiff.

James I. Poole and Miller, Mack & Fairchild, all of Milwaukee, Wis., for defendant.

DUFFY, District Judge.

This is an action brought under Section 16(b) of the Fair Labor Standards Act, 29 U.S.C.A. § 216(b), for alleged unpaid overtime wages. A period of 30 weeks is involved during which plaintiff worked as a draftsman on what is known as the Y-40 Project.

At the time plaintiff commenced working for the defendant on May 8, 1944, his release from his former employment had not been cleared by the War Manpower Commission. In order to protect the defendant, plaintiff signed a paper stating he would render services as an engineering consultant and that he would be considered as "an independent contractor." The plaintiff, in fact, was not an engineer. He was at that time 23 years of age and had attained no scholastic education beyond high school. He worked under the same direction and control as other employees of the defendant, and Social Security and withholding tax deductions were made from his wages by the defendant.

The Y-40 Project was undertaken by defendant pursuant to a contract with the United States Army Air Force. Pursuant thereto, defendant undertook the design and development of an internal combustion engine to be used as an auxiliary power plant for the B-29 airplane. If the Army Air Force found the design of the engine acceptable, defendant expected to engage in the manufacture of such engines for the Army Air Force.

In order to manufacture the engine, it was necessary to prepare drawings, plans and specifications. Plaintiff was engaged in making drawings and in checking and lay-out work. One model engine was built. Mr. Conrad, the vice president of the defendant, took the plans and specifications to Wright Field at Dayton, Ohio, where he consulted with Air Force officials. He then brought the plans back to Wisconsin. After his return to Wisconsin, Conrad was informed by telephone that the design of defendant's engine was not acceptable to the Army Air Force, and the project was thereafter abandoned by defendant. Plaintiff was then shifted to another department and placed on a straight hourly wage of $1.24 per hour with time and one-half for all hours worked in excess of 40 hours per week.

Defendant strongly urges that during the period here in question plaintiff was not engaged in commerce, or in the production of goods for commerce. Defendant argues that if goods are to be considered produced for commerce, they must partake of at least one of the elements of commerce, but that here plaintiff had nothing to do with any goods that moved in the stream of commerce. Defendant points out that the model engine that was produced by defendant never moved across State lines.

The Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., is remedial legislation and should be liberally construed. "Any exemption from such humanitarian and remedial legislation must therefore be narrowly construed, giving due regard to the plain meaning of statutory language and the intent of Congress." A. H. Phillips v. Walling, 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095.

Section 3(j) of the act states that "an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State."

The United States Supreme Court has held that occupations such as elevator operators, watchmen, firemen and porters, engaged in rendering services in a building in which goods were produced for commerce and performing work in relation thereto, had such a close and intimate tie with the process of production for commerce as to be an essential part of it. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. 83. Other courts have held that carpenters, electricians, engineers, mechanics, messengers and telephone operators (Bowie v. Gonzalez, 1 Cir., 117 F.2d 11), janitors, porters and handymen (Muldowney v. Seaberg Elevator Co., Inc., D.C., 39 F.Supp. 275), and clerical workers (Wilkinson v. Noland Co., Inc., D.C., 40 F.Supp. 1009), were engaged in occupations or processes necessary to the production of goods for commerce and were entitled to the benefits of the Act.

But, defendant argues, the work upon which plaintiff was engaged was in the nature of an experiment and was completely devoid of every element which connotes "commerce." Defendant also makes some point of the fact that the plans upon which plaintiff worked were never sold or exchanged, as after Conrad's conference at Wright Field, Dayton, Ohio, he personally brought the plans back to Wisconsin.

If defendant's plans had been adopted by the Army Air Force, every engine constructed by defendant would have gone directly into interstate commerce; these engines would have been installed in B-29 planes wherever such planes were constructed or assembled. So defendant's argument boils down to this: that he was not under the Act because of the happenstance such plans were rejected, but that he would have been covered by the Act if the plans upon which he worked had been accepted.

Many large industrial concerns in this country have research departments and carry on experimentation. Efforts are constant by such concerns to find more efficient methods of manufacturing their old products and designing new and improved devices. Suppose two draftsmen work side by side in the same drafting room and receive the same hourly rate of pay, and work the same amount of overtime. It would indeed be a novel construction of the Fair Labor Standards Act to hold that one was not entitled to the overtime pay benefits of the Act because the project on which he worked did not measure up to expectations and was eventually abandoned before any of the product designed was shipped across State lines.

Defendant's construction is not sound in view of the interpretations of the Act by the Supreme Court. In United States v. Darby, 312 U.S. 100, 117, 61 S.Ct. 451, 459, 85 L.Ed. 609, 123 A.L.R. 1430, the court said: " * * * The obvious purpose of the Act was not only to prevent the interstate transportation of the proscribed product, but to stop the initial step toward transportation, production with the purpose of so transporting. * * *"

In Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, at page 94, 63 S.Ct. 125, at page 128, 87 L.Ed. 83, Justice Roberts in his dissenting opinion sums up the holding of the majority as follows: " * * * The Court relies, rather, on the Act's inclusion of anyone employed 'in any process or occupation necessary to the production' of goods for commerce. The reasoning seems to be as follows. The oil will pass into commerce if it is mined. But it cannot be mined unless somebody drills a well. An independent contractor's men do part of the drilling. Their work is 'necessary' to the mining and the transportation of the oil. So they fall within the Act." Although Justice Roberts was vigorously dissenting, he accurately summarized the majority opinion.

In Schulte Co. v. Gangi, 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114, 167 A.L.R. 208, the court was concerned with whether the Act covered service and maintenance employees of a building which was tenanted by occupants who received, worked on and returned in intrastate commerce goods belonging to non-occupants who subsequently in the regular course of their business shipped substantial portions of the

occupants' products to other States. The Circuit Court of Appeals had said, 2 Cir., 150 F.2d 694, 697: " * * * And the testimony clearly shows that at the time of production these tenants had at the very least reasonable grounds to anticipate that their product would move in other states. This is all that had to be shown to constitute them interstate producers. * * *" The Supreme Court said at page 121 of 328 U.S., at page 931 of 66 S.Ct., 90 L.Ed. 1114, 167 A.L.R. 208: "From these facts, we think the conclusion of the Circuit Court of Appeals that these tenants had reasonable grounds to anticipate that material quantities of their product would move interstate is well supported. It is not essential that individual products should be traced. It is sufficient that from the circumstances of production, a trier of fact may reasonably infer that a producer has grounds to anticipate that his products will move interstate. * * *"

■ I conclude that the plaintiff was employed in the "initial step" toward production for commerce and is entitled to the benefits of the Fair Labor Standards Act.

■ A dispute has arisen between the parties as to the proper computation of plaintiff's overtime wage. Plaintiff worked from 8:00 a. m. to 5:00 p. m., with one hour out for lunch, and from 6:00 p. m. to 7:30 p. m. on Mondays through Fridays. On Saturdays he worked from 8:00 a. m. to 4:00 p. m., with one hour out for lunch. He worked every other Sunday. During the 30 weeks here involved he spent one week on vacation. For 14 weeks, when his hourly rate of pay was 91¢, plaintiff worked 54.5 hours each week, or a total of 14.5 overtime hours per week. For 15 weeks plaintiff worked 58.5 hours each week, or a total of 18.5 overtime hours per week. His hourly rate of pay for these weeks was 86¢. The correct computation is:

14 weeks x 14.5 overtime hours x
45.5¢ per hour (1/2 the hourly
rate) equals:.................. $ 92.37

15 weeks x 18.5 overtime hours x
43¢ per hour (1/2 the hourly
rate) equals:.................. 119.33

Total unpaid wages:......... $211.70

■ Defendant urges that if judgment goes for plaintiff this court exercise its discretion under Section 11 of the Portal-to-Portal Act of 1947, 29 U.S.C.A. § 260, and not allow liquidated damages, claiming it acted in good faith. It is my opinion that a sufficient showing of good faith has not been made, and judgment may go in favor of the plaintiff for $211.70 for total unpaid wages, a like amount as liquidated damages, the sum of $125 for attorney's fee, plus costs.