**William J. JOHNSTON,**
**Plaintiff-Appellant,**

v.

**SPACEFONE CORPORATION,**
**Defendant-Appellee.**

No. 82–8143.

United States Court of Appeals,
Eleventh Circuit.

June 9, 1983.
As Amended on Denial of Rehearing and
Rehearing En Banc Aug. 22, 1983.

Roney, Circuit Judge, dissented and filed opinion.

Word, Cook & Word, Reuben M. Word, James F. McNamara, Carrollton, Ga., for plaintiff-appellant.

Cofer, Beauchamp, Hawes & Brown, Robert S. Jones, Atlanta, Ga., for defendant-appellee.

Before GODBOLD, Chief Judge, RONEY, Circuit Judge, and PITTMAN *, District Judge.

GODBOLD, Chief Judge:

This appeal concerns William Johnston's suit against his former employer, Spacefone Corporation, for minimum wages and overtime pay allegedly due under the Fair Labor Standards Act (FLSA). The district court dismissed Johnston's suit for want of subject matter jurisdiction, holding that Johnston was neither "engaged in commerce" nor "engaged in the production of goods for commerce." 29 U.S.C. Sec. 203, 206, 207. Finding that Johnston was engaged in the production of goods for commerce, we reverse.

Spacefone hired Johnston as a designer/draftsman to assist in the development of a "state-of-the-art" cordless telephone. Johnston's specific responsibilities included constructing dies, trimming plastics, drafting parts, laying out electronic circuitry and some testing. At the time of trial Spacefone's project remained in the experimental stage. Although Spacefone developed an unperfected prototype that was transported interstate in an attempt to solicit investors for the project, it had not yet begun mass production of a finished product. Whether such production will ever occur is a matter of uncertainty.

Johnston initially worked for Spacefone as a part-time employee but he soon began to work full-time. Johnston alleges that despite the absence of a formal written contract, the parties agreed that Johnston was to receive $250 per week for his services. He alleges that while he sometimes received the agreed upon sum, he sometimes received nothing at all. Johnston now seeks to invoke FLSA to recover minimum wages and overtime pay. The only issue on appeal is whether Johnston meets the FLSA's jurisdictional requirements because he was either "engaged in production of goods for commerce" or "engaged in commerce" while employed by Spacefone.

■ As the statute's language suggests, Johnston can demonstrate FLSA's applicability by showing that he was engaged in (1) "production" of (2) "goods" (3) "for commerce." In determining whether Johnston was so engaged, we must focus on Johnston's activities, rather than the general nature of his employer's business. *See Mitchell v. Lublin, McGaughy & Associates,* 358 U.S. 207, 79 S.Ct. 260, 3 L.Ed.2d 243 (1959).

> According to the Act, an employee
> shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof....

29 U.S.C. Sec. 203(j). An employee thus "produces" goods if he is engaged either in actual production or in a "closely related process" that is "directly essential to" actual production.

■ Equating actual production with physical work on the employer's final prod-

---

* Honorable Virgil Pittman, U.S. District Judge for the Southern District of Alabama, sitting by designation.

uct, Spacefone argues that Johnston was not engaged in actual production. It further contends that because actual production, so defined, has never begun, Johnston cannot have been engaged in a "closely related process ... directly essential" to actual production.

The critical flaw in Spacefone's argument lies in its premise that actual production is confined to physical work on the final project. In *Borden Co. v. Borella,* 325 U.S. 679, 683, 65 S.Ct. 1223, 1225, 89 L.Ed. 1865 (1945), the Supreme Court defined actual production more broadly to encompass the planning stages as well as final physical production of the product. The Court there held that FLSA covers maintenance employees who worked in an office building staffed by Borden's executive and administrative employees. No physical production on the final goods occurred in the building but the Court held that executive and administrative employees who planned the product were engaged in actual production stating:

> Economic production, in other words, requires planning and control as well as manual labor. [footnote omitted] He who conceives or directs a productive activity is as essential to that activity as the one who physically performs it. From a productive standpoint, therefore, petitioner's executive officers and administrative employees working in the central office building *are actually engaged in the production of goods for commerce* just as much as are those who process and work on the tangible products in the various manufacturing plants.

325 U.S. at 683, 65 S.Ct. at 1225 (emphasis added).[1] Accordingly, the Court held that the maintenance employees performed tasks "necessary to" the actual production

of the administrative and executive employees and could claim the benefit of FLSA's provisions.[2]

In light of *Borden*'s broad definition we hold that Johnston was engaged in actual production. Like the administrative and executive employees in *Borden,* Johnston was actively involved in the planning stages of Spacefone's product.

The more difficult steps in our analysis concern whether Johnston was engaged in producing "goods" "for commerce." Although Spacefone fully intends to produce cordless telephones for interstate distribution, the preliminary planning process in which Johnston was involved has not yet come to fruition. Spacefone accordingly argues that because it has not yet produced and distributed a finished cordless telephone, Johnston could not have been engaged in producing "goods" "for commerce."

The district courts that have addressed this issue have reached opposing conclusions. In *Krill v. Arma Corp.,* 76 F.Supp. 14, 17 (E.D.N.Y.1948), the FLSA plaintiff, an engineer, was involved in the experimental development of fire control and navigational instruments for ships. Noting that there was no evidence that the plaintiff's developmental work was ever used to produce a tangible product, the court held that FLSA did not apply. In *Tormey v. Kiekhaefer Corp.,* 76 F.Supp. 557, 559 (E.D.Wis. 1948), an engineer had worked on an experimental aircraft engine that was never put into production. The district court held that the plaintiff was engaged in the production of goods for commerce, explaining:

> It would indeed be a novel construction of [FLSA] to hold that one was not entitled to the overtime pay benefits of the Act because the project on which he worked

---

**1.** *See also Western Union Telegraph Co. v. Lenroot,* 323 U.S. 490, 503, 65 S.Ct. 335, 341, 89 L.Ed. 414 (1945) ("production" includes "all steps whether manufacture or not, which lead to readiness for putting goods into the stream of commerce"). Echoing *Borden,* the applicable regulations define actual production to include "the administration, planning, management, and control of the various physical

processes ...." 29 C.F.R. Sec. 776.16(d) (1982).

**2.** When *Borden* was decided 29 U.S.C. Sec. 203(j) covered employees engaged in processes "necessary to" actual production. The present version covers employees engaged in processes "closely related" and "directly essential" to actual production.

did not measure up to expectations and was eventually abandoned before any of the product designed was shipped across State lines.

*See also Wirtz v. Koch,* 301 F.Supp. 957 (D.S.D.1969) (architectural plans, drawings and blueprints sent out-of-state constituted "goods" even though plans were not ultimately used).

 Guided by the underlying purposes of FLSA's jurisdictional provisions, we believe that *Tormey* states the more reasonable result. By denying coverage to employees who merely "affect" commerce, Congress chose not to extend FLSA's coverage to the constitutional maximum. "However, within the tests of coverage fashioned by Congress, the Act has been construed liberally to apply to the furthest reaches consistent with congressional direction." *Mitchell v. Lublin, McGaughy & Associates,* 358 U.S. 207, 211, 79 S.Ct. 260, 263, 3 L.Ed.2d 243 (1959). Congress's primary purpose in refusing to extend FLSA's coverage to its constitutional maximum was to leave regulation of "local" business to the states. *See* Conference Rep. No. 1453, 81st Cong. 1st Sess. (1949) *reprinted in* 1949 U.S. Code Cong. Service 2241, 2251, 2252–54 (listing examples of "local" businesses); *10 E. 40th St. Building, Inc. v. Callus,* 325 U.S. 578, 582–83, 65 S.Ct. 1227, 1229, 89 L.Ed. 1806 (1945); *Kirschbaum v. Walling,* 316 U.S. 517, 520–21, 62 S.Ct. 1116, 1118, 86 L.Ed. 1638 (1942).

Johnston's activities here are plainly not the type of local activity that Congress wished to exclude from FLSA. First, Johnston was employed in the improvement of an instrumentality of commerce. *See Mitchell v. Owen,* 292 F.2d 71, 75 (6th Cir. 1961) ("It is settled law that the production of materials for use in the improvement ... of ... instrumentalities of interstate commerce constitutes the production of goods for commerce") (citing *Alstate Construction Co. v. Durkin,* 345 U.S. 13, 73 S.Ct. 565, 97 L.Ed. 745 (1953)). Second, Spacefone used its unperfected prototype to solicit investors interstate. Finally, Spacefone fully intends that a completed product will eventually be distributed in interstate commerce.

 In light of these considerations we hold on these facts that it is not necessary that the employer's product actually have been distributed in interstate commerce. Using the test adopted in *Wirtz v. Ray Smith Transport Co.,* 409 F.2d 954, 957 (5th Cir.1969), Johnston was engaged in producing "goods" "for commerce" because Spacefone "reasonably expect[ed its] product to move or cause movement in interstate commerce...."[3] *See U.S. v. Darby,* 312 U.S. 100, 118, 61 S.Ct. 451, 459, 85 L.Ed. 609 (1941).[4]

We reach the same result on the basis of a theory that treats Spacefone's prototype as a "good" for purposes of FLSA. Even accepting arguendo Spacefone's narrow definition of actual production as physical work on the final product, Johnston was involved in actually producing the prototype. He *inter alia* trimmed plastic for the prototype and tested the product.[5] Second, the prototype constituted a "good" within

**3.** So interpreted, FLSA is within Congress's constitutional power to regulate matters that "affect" commerce. *See e.g., Wickard v. Filburn,* 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942); *U.S. v. Darby,* 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1941). Congress may constitutionally regulate production aimed at improving or changing instrumentalities of interstate commerce, *see Alstate Construction Co. v. Durkin,* 345 U.S. 13, 73 S.Ct. 565, 97 L.Ed. 745 (1952), even if the production is in preliminary stages.

**4.** "production for commerce" ... includes at least production of goods, which, at the time of production, the employer, according to the normal course of his business, intends or expects to move in interstate commerce although, through the exigencies of the business, all of the goods may not thereafter actually enter interstate commerce.

**5.** Under Spacefone's definition of "actual production," Johnston's other activities such as drafting layouts of electronic schematics and building dies for the vacuum form machine, if not actual production, were closely related and directly essential to the actual production of the prototype.

the meaning of Sec. 203(i).[6] The former Fifth Circuit and other courts have held that plans prepared by surveyors, draftsmen and the like are goods within the meaning of FLSA. *See Wirtz v. A.S. Giometti & Associates, Inc.,* 399 F.2d 738, 739 (5th Cir.1968); *Shultz v. Merriman,* 425 F.2d 228 (1st Cir.1970); *Wirtz v. Koch, supra.* The prototype telephone, the physical embodiment of Spacefone's unperfected plans, falls into the same category. Third, the prototype was produced "for commerce" because Spacefone, by circulating the prototype interstate to investors, attempted to sell it interstate.[7] *Cf. Shatel Corp. v. Mao Ta Lumber and Yacht Corp.,* 697 F.2d 1352, 1355–1356 (11th Cir.1983) (By soliciting orders interstate, manufacturers caused product to "enter into commerce" within meaning of Lanham Trade Mark Act).

We accordingly hold that Johnston was engaged in the production of goods for commerce.

REVERSED and REMANDED for proceedings consistent with this opinion.

RONEY, Circuit Judge, dissenting:

I respectfully dissent. Since the employer never produced goods for commerce, Johnston could not have been engaged in such production. This case is unlike those relied upon by the Court which hold that where the employer is engaged in the production of goods for commerce, the support personnel, so to speak, are engaged in that effort, even if they are engaged in research and development, maintenance, or office and administrative work. *E.g., Borden v. Borella,* 325 U.S. 679, 65 S.Ct. 1223, 89 L.Ed. 1865 (1945); *Tormey v. Kiekhaefer Corp.,*

76 F.Supp. 557 (E.D.Wis.1948). In those cases the employees' activities contributed in some way to the employers' actual production of goods for commerce.

Here, however, Spacefone Corporation was formed for the sole purpose of developing and marketing a cordless extension telephone. It never accomplished that, nor did it manufacture and sell any other product. Thus plaintiff never aided in any way, directly or indirectly, the production of any good sold in interstate commerce. Even under the most expansive interpretation of the statute, he was not "engaged in the production of goods for commerce." 29 U.S.C.A. §§ 206–207.

Nor was Johnston engaged in interstate commerce, even if his employer was not, to bring him within the principle of *Mitchell v. Lublin, McGaughy & Associates,* 358 U.S. 207, 211, 79 S.Ct. 260, 263, 3 L.Ed.2d 343 (1959). Johnston introduced evidence that he spent a substantial amount of time using an instrumentality of commerce, the telephone, in connection with his job for Spacefone. The regular and recurrent use of the mails and other channels of communication by an employee as a part of his duties is sufficient to demonstrate that the employee is engaged in commerce, *Montalvo v. Tower Life Building,* 426 F.2d 1135, 1143–44 (5th Cir.1970), but "[t]his does not mean that any use by an employee of the mails and other channels of communication is sufficient to establish coverage." 29 C.F.R. § 776.10(b) (1981). The trial court found that Johnston's interstate telephone calls "were not part of his regular duties, were incidental to his primary employment, and did not constitute a substantial portion of

---

**6.** Congress defined "goods" broadly:

"Goods" means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof.

29 U.S.C. Sec. 203(i).

While FLSA requires the production of good *s,* Spacefone produced only one prototype. We decline to interpret the statute literally because to do so would frustrate FLSA's purposes. *See supra.*

**7.** The perhaps more typical situation is where the plan is sold to a third party who, based on the plan, carries out the actual production or construction. Here Spacefone, rather than a third party, intends to produce goods based on the plan it has conceived. This does alter the fact that Spacefone in effect attempted to sell its plan interstate to third parties.

plaintiff's time." [*] While the amount of usage is not determinative, utilization of the channels of interstate communication must be a regular and recurrent part of the employee's responsibilities under *Montalvo* and 29 C.F.R. § 776.10(b) (1981). The trial court's finding of fact is not clearly erroneous. Johnston failed to prove he was "engaged in commerce." 29 U.S.C.A. §§ 206–207.

I would affirm.