[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 2, 2007
THOMAS K. KAHN
CLERK

_____

No. 07-10649
Non-Argument Calendar

_____

D. C. Docket No. 05-00683-CV-ORL-18-JGG

JEFFREY SCOTT,

Plaintiff-Counter-
Defendant-Appellant,

versus

K. W. MAX INVESTMENTS, INCORPORATED,
WILLIAM DAVIDSON,
MICHAELINE DAVIDSON,

Defendants-Counter-
Claimants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(October 2, 2007)

Before BIRCH, DUBINA and CARNES, Circuit Judges.

PER CURIAM:

Plaintiff-appellant, Jeffrey Scott, appeals the district court's grant of summary judgment against him as to his claim against defendants-appellants K.W. Max Investments, Inc. ("K.W. Max"), William L. Davidson and Michaelina Davidson, for unpaid overtime compensation on the ground that the court erred in finding his employment was not covered by the Fair Labor Standards Act (FLSA) of 1938, as amended, 29 U.S.C. § 201 et seq. He also challenges the court's imposition of sanctions against him for failure to attend mediation as per the court's scheduling order. We affirm summary judgment and find we are without jurisdiction to review the issue of sanctions.

## I. BACKGROUND

Scott was employed as a manual laborer by K.W. Max from June 2003 until January 2004, and again from May 2004 until June 2004. K.W. Max is a Florida corporation of which the business purpose is to buy and re-sell residential homes and property located in Florida. The Davidsons own K.W. Max. William L. Davidson is its President and Michaelina Davidson is its Secretary. The Davidsons have presented affidavits indicating that K.W. Max's annual gross volume of sales or business done has been less than $500,000 for each year it has existed.

During his periods of employment, Scott worked at two sites in Grant,

2

Florida. At one site, a house on U.S. Highway 1, he performed remodeling work and yard work. At the other site, a lot on an island in Grant, Scott worked on the construction of a house. Specifically, much of his work there involved loading supplies and materials onto a barge for transportation to the island. Scott acknowledges that he never left the state of Florida to carry out any of his duties and that he never used the telephone, internet or mail in furtherance of his duties.

Scott asserts that he regularly worked more than forty hours per week, but was not compensated at the overtime rate for those hours in excess of forty. Accordingly, Scott initiated this FLSA action against K.W. Max and the Davidsons alleging that he was an employee engaged in commerce, or that K.W. Max is an enterprise engaged in commerce or in the production of goods for commerce for purposes of coverage under the act. In his response to the Davidsons and K.W. Max's motion for summary judgment disputing coverage under the FLSA, Scott requested that he be allowed to amend his Complaint to allege that K.W. Max and the Davidsons were joint employers under the FLSA. In considering the motion for summary judgment, the district court also considered the arguments related to Scott's proposed amendment to his complaint and those made in the Davidsons and K.W. Max's response thereto. The district court found that Scott had failed to raise a genuine issue of material fact as to whether his employment was covered by

3

the FLSA and granted summary judgment in favor of K.W. Max and the Davidsons.

Finally, the district court's scheduling order required the parties to attend any mediation in person. Scott failed personally to attend a scheduled mediation, appearing instead by telephone. As a result, the district court sanctioned Scott, awarding K.W. Max and the Davidsons their reasonable expenses and attorney's and mediator's fees incurred in connection with that mediation.

## II. DISCUSSION

A. <u>Summary Judgment</u>

"We review the district court's grant of summary judgment <u>de novo</u>, applying the same legal standards as the district court, and construing the facts and drawing all reasonable inferences therefrom in the light most favorable to the non-moving party." <u>Centurion Air Cargo, Inc. v. United Parcel Service Co.</u>, 420 F.3d 1146, 1149 (11th Cir. 2005). We will affirm a district court's grant of summary judgment to a moving party when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The movant 'bears the initial responsibility of informing the district court of the basis for its

motion' by identifying those portions of the record that demonstrate the absence of genuine issues of material fact." Baldwin County, Ala. v. Purcell Corp., 971 F.2d 1558, 1563 (11th Cir. 1992) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). Thereafter, the burden shifts to the nonmovant to produce affidavits or other relevant and admissible evidence sufficient to rebut this showing. Id.; Celotex, 477 U.S. at 324, 106 S.Ct. at 2553. If such evidence "is merely colorable, or is not significantly probative," summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986) (citations omitted). Finally, summary judgment is mandated against a party failing to "make a showing sufficient to establish" an essential element of its case. Celotex, 477 U.S. at 322.

The FLSA requires an employer to pay an employee overtime compensation for any hours worked in excess of forty in a given workweek, if that employee "is engaged in commerce or in the production of goods for commerce ['individual coverage'], or is employed in an enterprise engaged in commerce or in the production of goods for commerce ['enterprise coverage']." 29 U.S.C. § 207(a). Accordingly, an employee bringing a claim for unpaid overtime compensation must establish either individual or enterprise coverage. See, e.g., Thorne v. All Restoration Servs., 448 F.3d 1264, 1265-66 (11th Cir. 2006). On appeal, Scott

5

argues only as to enterprise coverage.

An employee may show his employer is subject to the FLSA by way of enterprise coverage if he demonstrates that the employer is an enterprise that (1) "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and has an (2) "annual gross volume of sales made or business done [of] not less than $500,000." 29 U.S.C. § 203(s)(1)(A).

Under the statute, an "[e]nterprise" is "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose." 29 U.S.C. § 203(r)(1). "'Person' means an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a). "'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). "'Goods' means goods . . ., wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a

6

producer, manufacturer, or processor thereof." 29 U.S.C. § 203(i).

1. *Interstate commerce*

To qualify as "engaged in commerce" under the FLSA, an employee must "directly participat[e] in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce . . . or (ii) by regularly using the instrumentalities of interstate commerce in his work." Thorne, 448 F.3d at 1266. An employee may also qualify as "engaged in . . . the production of goods for commerce" if his "work is closely related and directly essential to the production of goods for commerce. Id. at 1268.

Scott first alleges that his own employment fulfilled this first prong of enterprise coverage. Rather than supporting this allegation with explanatory references to specific evidence, he generally cites the affidavits of the Davidsons and Rick Krack, their accountant. These affidavits confirm that the materials with which Scott worked, over the course of his employment, came primarily from a Home Depot store which was also located in Florida, and that none of the materials purchased were purchased for resale by K.W. Max. Scott offers no specific argument or any evidence that any of the goods purchased from Home Depot had been moved in or produced for interstate commerce. In fact, there is some evidence that at least one of them was not to be sold but to become the Davidsons'

7

secondary residence.  See R1-33 at 20.

Scott also argues that because K.W. Max's business purpose was to buy and re-sell residential homes and property located in Florida, the homes at which he performed work were to be sold.  There is no evidence in the record, however, that these homes were to move in interstate commerce.

Although Scott does not mention it specifically, the single instance of lumber obtained by William Davidson from the demolition of a friend's house in Louisiana would constitute goods moved in interstate commerce.  However, the regulations interpreting the FLSA clarify that

> an enterprise . . . will be considered to have employees . . . handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person, if during the annual period which it uses in calculating its annual sales for purposes of the other conditions of these sections, it <u>regularly</u> and <u>recurrently</u> has at least two or more employees engaged in such activities[,]" . . . [but i]t is plain that an enterprise that has employees engaged in such activities only in <u>isolated</u> or <u>sporadic</u> occasions, will not meet this condition.

29 C.F.R. § 799.238 (emphasis added).  The purchase of lumber from Louisiana constitutes just such an isolated incident.

Finally, Scott attempts to satisfy the first prong of enterprise coverage by asserting that the Davidsons individually are his joint employers along with K.W. Max and that "their income is derived from both intrastate and interstate sources; therefore, the D[avidsons] engage in interstate commerce and are subject to the

8

FLSA." Appellant's Br. at 14. However, even if we were to accept his argument that the Davidsons were his joint employers, he fails to elaborate as to what income the Davidsons derive from interstate commerce, or to point to any evidence in support of his assertion. Before the district court, Scott pointed to the Davidsons' personal tax returns and alleged that they derived investment income from interstate sources. Such an allegation, standing alone, as was noted by the district court, is insufficient to show interstate commerce for the purposes of enterprise coverage.

We find that Scott's allegation and the tax returns are insufficient to raise a genuine issue of material fact as to whether the enterprise by which Scott was employed (whether it be K.W. Max alone, or jointly with the Davidsons) of which the business purpose was to buy and re-sell residential homes and property in Florida, had any employee "engaged in commerce or in the production of goods for commerce, or [any] employee[ ] handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce." 29 U.S.C. § 203(s)(1)(A). Accordingly, we find Scott has failed to raise a genuine issue of material fact as to the first prong of enterprise coverage.

2. *Annual Gross Dollar Amount*

Even if the tax returns had constituted sufficient evidence of participation in

9

interstate commerce to meet the first prong of enterprise coverage, Scott has failed also to produce sufficient evidence to raise a genuine issue of material fact as to the "annual gross volume of sales made or business done" by his employer(s). 29 U.S.C. § 203(s)(1)(A).

K.W. Max and the Davidsons have produced affidavits stating that K.W. Max's annual gross volume of sales or business done is less than $500,000. In response, Scott offers a complex recitation of figures and calculations related to alleged transfers of property between K.W. Max and the Davidsons. However, even though it is clear from deposition testimony that Scott had received the income tax returns for 2003 and 2004 for K.W. Max and the Davidsons,[1] Scott has pointed to no evidence in the record that any of these transfers actually occurred, or if they did occur, that they occurred during the years of Scott's employment, or of any particular dollar amounts involved.[2]

The only evidence of any transaction is Rick Krack's deposition testimony regarding the sale by K.W. Max of one property in 2003 or 2004, for $485,000.

---

[1]Although Scott discusses K.W. Max tax returns, they are nowhere to be found in the record.

[2]Scott emphasizes "monies and property that passed between the DAVIDSONS and MAX," Appellant's Br. at 12, but deposition testimony makes clear that any such transfers were made as shareholder contributions with corresponding debts placed in KW Max's books. Thus, they were entirely internal to the enterprise and would not constitute sales made or business done by the enterprise. See 29 C.F.R. 779.259(a).

The transaction was an installment sale under which K.W. Max received monthly payments that continued until the full amount was finally paid off at end of 2005 or early 2006. R3-48-4 at 191-93. Scott has offered no evidence of what portion of the sales price might have been received by K.W. Max during either year of his employment.

Scott also argues that, because the deeds for all properties transferred to K.W. Max by the Davidsons remain in the Davidsons' names, the single documented sale for $485,000 could be added to the Davidsons' "income" to reach the required $500,000 in sales made or business done. Appellant's Br. at 13. Even if it were appropriate to combine such activities, not only is there no evidence of the portion of the $485,000 sales price received in either 2003 or 2004, the Davidsons' "income," as recorded on their tax returns, is far below $500,000 for each 2003 and 2004. R3-48-2 at 1; 48-3 at 1. Further, Scott has made no argument as to how any of the income listed on those tax returns qualifies as "sales made or business done" under the statute.

Because we agree with the district court that "[t]he fortuitous circumstance of the amount of sales or exchanges of stocks and bonds for reinvestment in a particular year would be little, if any, indication of the size of the business," we will not consider such amounts and are left with the Davidsons' investment

11

income.  See R4-60 at 8 n.3 (quoting Wirtz v. Columbian Mut. Life Ins., 246 F. Supp. 198, 204 (D.C. Tenn. 1965)).  There was no capital gain, and thus no "income" on the Davidsons' sales of stocks or bonds in either 2003 or 2004.  See R3-48-2 at Schedule D; 48-3 at Schedule D.  Further, their investment income (from interest and dividends) amounted to around $74,000 in 2003 and about $52,000 in 2004.  R3-48-2 at Schedule B; 48-2 at Schedule B.  Neither even approaches the required $500,000.

Accordingly, we find that Scott has failed to raise a genuine issue of material fact as to whether K.W. Max and/or the Davidsons (should they be joint employers) had gross sales or business done which met or exceeded $500,000 in any year during which Scott was employed.

B.  Sanctions

Generally, we have jurisdiction to review only those "judgments, orders or portions thereof which are specified in an appellant's notice of appeal."  Osterneck v. E.T. Barwick Indus. 825 F.2d 1521, 1528 (11th Cir. 1987); Fed. R. App. P. 3(c) (requiring that a notice of appeal "designate the judgment, order, or part thereof appealed.").  Further, "[a]lthough we generally construe a notice of appeal liberally, we will not expand it to include judgments and orders not specified unless the overriding intent to appeal these orders is readily apparent on the face of

the notice.  Osterneck, 825 F.2d at 1528.  Occasionally, when an unnoticed issue is "inextricably intertwined" with noticed issues, we will make an exception, but only when the adverse party will not be prejudiced.  See Hill v. BellSouth Telecomms., 364 F.3d 1308, 1313 (11th Cir. 2004).

Here, Scott specifically notices his intent to appeal the final judgment against him entered on 6 February 2007.  R4 62-63.  He makes no mention at all of the sanctions order which was entered on 8 January 2007.  Further, the issue of sanctions imposed upon Scott for failure to attend a mediation as ordered by the court is completely unrelated to the substantive case, and thus fails to fall under any exception to the rule.  Accordingly, due to Scott's failure to comply with Rule 3(c), we lack jurisdiction to review the issue of sanctions.

### III. CONCLUSION

Scott appeals the district court's grant of summary judgment against him as to his FLSA claim for unpaid overtime compensation.  He also challenges the district court's order sanctioning him for his failure to attend mediation in person.  Because we find that Scott failed to introduce sufficient evidence to raise a genuine issue of material fact as to whether his employment with K.W. Max was covered by Section 7 of the FLSA – any evidence that he was engaged in commerce or in the production of goods for commerce, or that K.W. Max or the Davidsons was an

13

enterprise engaged in commerce or in the production of goods for commerce, or any evidence that K.W. Max and/or the Davidsons had gross sales made or business done of $500,000 or more – we **AFFIRM** the district court's grant of summary judgment.  Because Scott failed properly to appeal it, we lack jurisdiction to review the district court's sanctions order.  Accordingly, we **DISMISS** that portion of Scott's appeal.