Richard MILBOURN, Plaintiff,

v.

AARMADA PROTECTION SYSTEMS 2000, INC. and Wainsworth Jackson, Defendants.

Case No. 08–60269–CIV.

United States District Court, S.D. Florida, Miami Division.

Nov. 20, 2008.

Stacey Hope Cohen, Keith Michael Stern, The Shavitz Law Group, P.A., Boca Raton, FL, for Plaintiff.

Chris Kleppin, Barry G. Feingold, Glasser Boreth & Kleppin, P.A., Plantation, FL, for Defendants.

### ORDER

CECILIA M. ALTONAGA, District Judge.

THIS CAUSE came before the Court on Defendants, Aarmada Protection Systems 2000, Inc. ("Aarmada), and Wainsworth Jackson's ("Jackson['s]") Motion for Summary Judgment [D.E. 19], filed on August 29, 2008. The Court has carefully considered the Motion, pertinent portions of the record, and applicable law.

## I. BACKGROUND[1]

This is an action for unpaid overtime wages brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq.[2] (See Compl. [D.E. 1]). Aarmada is a burglar alarm installation business located in the State of Florida, of which Jackson is the president and owner. (See Jackson Decl. [D.E. 19–2] ¶¶ 2–4). Aarmada only performs work within Florida, largely in Broward, Miami–Dade, and Palm Beach Counties, and does not solicit business outside of Florida. (See id. ¶¶ 4, 12).

Plaintiff, Richard Milbourn ("Milbourn"), worked at Aarmada from either July 2005 or January 2006[3] until March 2007. (See id. ¶ 2; Milbourn Decl. [D.E. 26–2] ¶ 2; Notice of Filing Exs., Ex. 14 [D.E. 24–15]). Milbourn performed installations of alarm systems on behalf of Aarmada at both new residential developments and existing commercial businesses. (See Milbourn Decl. ¶ 6). All of the structures Milbourn worked in were located within Florida. (See Jackson Decl. ¶ 6; Milbourn Decl. ¶¶ 22–23; Milbourn Dep. at 55:21–56:2, 57:1–6; Dep. of Howard South ("South Dep.") [D.E. 19–4] at 127:2–3). In particular, Milbourn spent approximately one year working at a residential community called "The Sanctuary" in Oviedo, Florida. (See Milbourn Decl. ¶ 22). Aarmada had been engaged by Crosswinds National, LLC d/b/a "Crosswinds Communities" ("Crosswinds"), a residential and commercial real estate developer headquartered in Michigan, for its work on The Sanctuary. (See Jackson Dep. at 26:20–25; Notice of Filing Exs., Ex. 13 [D.E. 24–14]).

Milbourn's responsibilities included the installation of security systems, intercom systems, audio components (such as speakers), surveillance cameras, monitors, DVRs, and central vacuums, as well as the running of wires and cables to set up telephone, cable television, and internet lines. (See Jackson Decl. ¶ 2; Milbourn Decl. ¶¶ 9, 11; Milbourn Dep. [D.E. 19–3] at 52:20–53:5, 61:5–18). Installations required the running of wires and cables to a central location in a building where the

---

1. Unless otherwise noted, the facts set forth in this section are undisputed.

2. The FLSA mandates that an employee covered under the Act "who works for more than forty hours a week is entitled to overtime compensation equal to one and a half times his regular rate of pay." Allen v. Bd. of Pub.

Educ. for Bibb County, 495 F.3d 1306, 1311 (11th Cir.2007) (citing 29 U.S.C. § 207).

3. There is conflicting evidence regarding when Milbourn began his employment with Aarmada, the resolution of which is not material to this Motion.

various lines were collected into a box called the "On–Q Enclosure." (*See* Jackson Dep. [D.E. 24–13] at 33:22–34:2; Milbourn Decl. ¶ 10). As part of the installation, Milbourn and other installers performing similar tasks would access and connect telephone lines for the purpose of completing installation of the alarm systems which required a telephone connection to function. (*See* Milbourn Decl. ¶ 10). Installers such as Milbourn would also install any necessary connectors or plugs into the walls of the structure. (*See id.* ¶ 12).

Materials used in the installation of security systems included items such as wires, cables, key pads, panels, plugs, tie wraps, central vacuums, DVRs, security cameras, monitors, audio speakers, intercom components, burglar alarm components, tools, and ladders. (*See* Jackson Decl. ¶ 8; Jackson Dep. at 35:7–15; Milbourn Decl. ¶ 5; Milbourn Dep. [D.E. 19–3] at 59:5–9; South Dep. at 125:23–126:2). Milbourn retrieved the materials he used on the job from the Aarmada offices and warehouse. (*See* Milbourn Dep. at 58:21–59:23; South Dep. at 125:13–126:2). These materials were all either produced or purchased within Florida. (*See* Jackson Decl. ¶¶ 7–8). Many of the materials were purchased from the wholesale company, ADI, which has a retail location in Orlando, Florida. (*See* Milbourn ¶ 16; South Dep. at 125:13–19, 126:3–23). ADI is headquartered in New York and maintains a website through which orders may be placed. (*See* Notice of Filing Exs., Ex. 2 [D.E. 24–3]). ADI also has distribution locations across the country. (*See id.*).

Many of the materials used by Milbourn and purchased from ADI were produced by companies such as Honeywell Genesis Cabling and Optical Cable Corporation, Honeywell Security, Broan–NuTone, LLC, Dedicated Micros, Optical Cable Corporation, and On–Q/Legrand. (*See* Milbourn Decl. ¶¶ 19–20; Notice of Filing Exs., Ex. 3 [D.E. 24–4]). Many of these companies are headquartered outside of Florida and manufacture their products outside of Florida. (*See* Notice of Filing Exs. [D.E. 24], Exs. 5–10).

Milbourn filed the instant action on February 26, 2008, seeking compensation for overtime pay allegedly due to him under the FLSA. Aarmada and Jackson move for summary judgment arguing they are not subject to the requirements of the FLSA because Aarmada is a local business that does not engage in commerce outside of Florida.

## II. LEGAL STANDARD

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285 (11th Cir.1997), and "must resolve all reasonable doubts about the facts in favor of the non-movant." *Un. of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.,* 894 F.2d 1555, 1558 (11th Cir.1990).

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). "As to materiality, the

substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. 2505. Likewise, a dispute about a material fact is a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* However, "[t]he mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252, 106 S.Ct. 2505.

"For factual issues to be considered genuine, they must have a real basis in the record.... [M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England,* 432 F.3d 1321, 1326 (11th Cir.2005). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. In those cases, there is no genuine issue of material fact "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. 2548.

## III. ANALYSIS

Defendants seek summary judgment on the issue of jurisdiction under the FLSA. To establish jurisdiction for an overtime violation under the FLSA, the plaintiff-employee must show either, (1) individual coverage—that the employee was engaged in commerce or in the production of goods for commerce; or (2) enterprise coverage—that the employer was engaged in commerce or in the production of goods for commerce. *See* 29 U.S.C. § 207(a)(1); *see also Scott v. K.W. Max Invs., Inc.,* 256 Fed.Appx. 244, 247 (11th Cir.2007). Milbourn argues that Aarmada satisfies the requirements for enterprise coverage.

An employer is subject to enterprise coverage if the employer

1. has employees engaged in commerce or in the production of goods for commerce, or [ ] has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

2. is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

29 U.S.C. § 203(s)(1)(A). Defendants concede that Aarmada's annual gross revenues exceeded $500,000 during the period of Milbourn's employment, satisfying the latter requirement. (*See* Mot. at 1–2). However, the parties' dispute concerns the first requirement.

To be "engaged in commerce" under the FLSA an employee "must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, *e.g.,* transportation or communication industry employees, or (ii) be regularly using the instrumentalities of interstate commerce in his work, *e.g.,* reg-

ular and recurrent use of interstate telephone, telegraph, mails, or travel." *Thorne v. All Restoration Servs., Inc.,* 448 F.3d 1264, 1266 (11th Cir.2006) (citing 29 C.F.R. §§ 776.23(d)(2), 776.24); *see also Scott,* 256 Fed.Appx. at 248. An employee is "engaged ... in the production of goods for commerce" if his or her "work is closely related and directly essential to the production of goods for commerce." *Thorne,* 448 F.3d at 1268 (citing 29 C.F.R. § 776.18); *see also Scott,* 256 Fed.Appx. at 248.

The term "goods" does not include "goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof." 29 U.S.C. § 203(i). The Eleventh Circuit has elaborated:

> When goods reach the customer for whom they were intended, the interstate journey ends and employees engaged in any further *intra* state movement of goods are not covered under the [FLSA]. Courts distinguish between merchants who bring commerce across state lines for sale and the ultimate consumer, who merely purchases goods that previously moved in interstate commerce for intrastate use.

*Thorne,* 448 F.3d at 1267 (internal citation omitted); *see also McLeod v. Threlkeld,* 319 U.S. 491, 494, 63 S.Ct. 1248, 87 L.Ed. 1538 (1943) ("[H]andlers of goods for a wholesaler who moves them interstate on order or to meet the needs of specified customers are in commerce, while those employees who handle goods after acquisition by a merchant for general local disposition are not.").

An enterprise is covered by the FLSA if "during the annual period which it uses in calculating its annual sales for purposes of the other conditions of these sections, it *regularly and recurrently* has at least two or more employees engaged in such activi-

ties. On the other hand, it is plain that an enterprise that has employees engaged in such activities only in isolated or sporadic occasions, will not meet this condition." 29 C.F.R. § 779.238 (emphasis added); *see also Scott,* 256 Fed.Appx. at 248 (single, isolated instance of obtaining lumber from Louisiana does not create enterprise coverage); *Polycarpe v. E & S Landscaping Serv., Inc.,* 572 F.Supp.2d 1318, 1322 (S.D.Fla.2008) (handful of out-of-state phone calls made by employees were sporadic and isolated and therefore insufficient to constitute regular and recurrent activities).

Therefore, in *Scott,* the court held that a corporation whose business was buying and reselling residential homes and properties located in Florida was not engaged in commerce where the materials with which employees worked came primarily from a local Home Depot store located in Florida and none of these materials were purchased by the corporation for resale. 256 Fed.Appx. at 248; *see also Thorne,* 448 F.3d at 1267 (an employee who purchases items from Home Depot is not engaged in commerce even if Home Depot purchased the items from an out-of-state wholesaler). Similarly, in *Polycarpe,* office supplies, landscaping materials, and tools used by employees had previously traveled in interstate commerce but were purchased only from local retail stores in South Florida. 572 F.Supp.2d at 1321. The court concluded "that these items utilized by the employees had come to rest—i.e., any journey of an interstate nature had ended—and were then utilized to transact the landscaping business, which was entirely local in nature." *Id.; see also Bien–Aime v. Nanak's Landscaping, Inc.,* 572 F.Supp.2d 1312, 1313 (S.D.Fla.2008) (all materials used in local landscaping business were produced or purchased by employer in state); *Lamonica v. Safe Hurricane Shutters, Inc.,* 578 F.Supp.2d 1363, 1367–68

(S.D.Fla.2008) (no evidence that employer regularly purchased materials manufactured in Colombia from out of state rather than from local suppliers); *Morales v. M & M Painting & Cleaning Corp.*, No. 07–23089–CIV, 2008 WL 4372891, at *4 (S.D.Fla. Sept. 24, 2008) (no evidence that paint used by employees of painting company was not bought locally despite the fact that it was manufactured by companies headquartered out of state nor evidence that paint was purchased for resale or that employer was not the end-user or ultimate consumer).

Meanwhile, in *Galdames v. N & D Investment Corp.*, No. 08–20472–CIV, 2008 WL 4372889, at *4 (S.D.Fla. Sept. 24, 2008), the employer-defendant leased or purchased equipment and supplies directly from out-of-state suppliers and manufacturers which were either shipped to a local distributor for delivery to the employer or shipped directly to the employer. The court determined the employer was subject to the FLSA because there was sufficient evidence that the goods were "used or otherwise handled . . . in a regular and recurrent manner as part of [the employees'] daily job requirements or duties." *Id.* "That an intermediary local delivery company may have been used to make the final delivery does not change the analysis." *Id.* at *5.

Milbourn argues that Aarmada is subject to enterprise coverage because all of its installers regularly handled and worked with goods and materials which had been produced for, and at some point moved in commerce. (*See* Opp'n [D.E. 25] at 17). However, Milbourn does not dispute that all of the goods and materials used by Aarmada's employees were purchased in the State of Florida, even if they were manufactured and produced elsewhere. Consistent with *Scott* and *Polycarpe*, it is irrelevant where the goods and materials were produced or where the manufactur-

ers of the products are headquartered because all of the goods and materials had come to rest at the local wholesaler in Florida before they were purchased by Aarmada. Unlike *Galdames*, there is no evidence that Aarmada ordered products directly from any of the out-of-state manufacturers or that the local wholesaler was merely an intermediary between the out-of-state manufacturers and Aarmada.

Further, Aarmada and its employees did not perform any work outside of Florida. Despite the fact that Milbourn worked at a residential housing development which was owned by an out-of-state company, Crosswinds, all of Milbourn and the other employees' work was performed in Florida. *See Thorne*, 448 F.3d at 1268 (employees of independent contractors are not engaged in the production of goods for commerce "merely because the customers of the employer happen to include producers of goods for commerce"). Although Crosswinds develops real estate outside of Florida, Milbourn submitted no evidence that Aarmada was ever engaged to work on Crosswinds' out-of-state properties or that the homes at The Sanctuary were intended to move in interstate commerce. *See Scott*, 256 Fed.Appx. at 248.

Aarmada is not engaged in commerce or in the production of goods for commerce and is therefore not subject to the FLSA. Jackson's liability as an officer is only derivative of Aarmada's liability to Milbourn, so Jackson is entitled to summary judgment as well. *See Casseus v. First Eagle, LLC*, No. 07–23228–CIV, 2008 WL 1782363, at *5 (S.D.Fla. April 18, 2008) (liability of corporate officer derivative of liability of corporation; where corporation is not subject to suit, officer is entitled to summary judgment) (citing *Patel v. Wargo*, 803 F.2d 632, 637 (11th Cir.1986)).

## IV. CONCLUSION

Consistent with the foregoing analysis, it is **ORDERED AND ADJUDGED** that Defendants' Motion [**D.E. 19**] is **GRANTED**. A judgment in favor of Defendants will be entered separately.