**Santos ZARATE, Plaintiff,**

v.

**JAMIE UNDERGROUND, INC., a Florida corporation, and John A. Coniglio, individually, Defendants.**

**Case No. 08–14212–CIV.**

United States District Court,
S.D. Florida,
Ft. Pierce Division.

June 23, 2009.

1330

David Spalter, Jill S. Schwartz & Associates, P.A., Winter Park, FL, for Plaintiff.

Chris Kleppin, Glasser, Boreth & Kleppin, P.A., Plantation, FL, for Defendants.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

JOSE E. MARTINEZ, District Judge.

THIS CAUSE came before the Court upon Plaintiff's Motion for Partial Summary Judgment (**D.E. No. 26**) and Defendants' Motion for Summary Judgment (**D.E. No. 27**). On June 13, 2008, Plaintiff filed the above-captioned action in this Court, alleging that Defendants, Jamie Underground, Inc., ("Corporate Defendant" or "JUI") and John A Coniglio ("Individual Defendant" or "Coniglio") failed to pay him overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (D.E. No. 1).

### I. Factual Background

The corporate Defendant, JUI, is a local ditch-digging and cable-burying business located in Martin County, Florida. (Coniglio Decl. ¶ 2). JUI buries underground utilities, such as pipes, cables, and wires. (Coniglio Dep. 7–8). The specific service provided by JUI workers, such as Plaintiff, is digging ditches, putting cables in the ditches, and refilling the ditch. (Coniglio Dep. 29, 24–25); (Coniglio Decl. ¶ 12); (Zarate Dep. 63). JUI workers do not hook up the buried cables to other cable or commercial devices and do not perform any action designed to make the cable function or communicate across state lines. (Coniglio Decl. ¶ 12); (Zarate Dep. 63, 147–48). After JUT's services are completed, the homeowner is not yet able to view or use cable television, the telephone, or the internet, because the wires must be connected to the necessary devices. (Coniglio Dep. 83); (Coniglio Decl. ¶ 12).

Plaintiff was hired by JUI as a laborer in 2004. (Zarate Dep. 11, 62); (Coniglio Decl. ¶ 4). He worked for JUI in that capacity until December 2007, with the exception of the period between October 2005 and February 2006. (Zarate Dep. 11–12). Like the other workers, he dug ditches and buried cables. JUI paid him a combination of hourly wages and piece rates. (Coniglio Dep. 39–41). When he performed "production work" such as digging a trench, he received a piece rate based upon the length of the trench and the size of the cables. *Id.* When he performed other functions, such as clean-up duties, he received an hourly rate. *Id.* Plaintiff asserts that he often worked in excess of 40 hours per week and was never paid overtime on those weeks.

Individual Defendant John Coniglio has an ownership interest in JUI. (Coniglio Decl. ¶ 3). Coniglio testified that he did not have any operational control over the day-to-day ditch digging performed by the corporate Defendant. (Coniglio Decl. ¶ 13). Coniglio testified that he went to the work sites on a "very infrequent" basis, but Plaintiff testified that he saw Coniglio at the work site once a week. (Coniglio Dep. 37); (Zarate Dep. 32). Coniglio testified that it was not his role to fire people, although he had the power to do so. (Coniglio Dep. 34, 53). Coniglio testified that his co-owner set the pay rates and the schedule, but the co-owner discussed the pay rates with him and he had the power to object to them. (Coniglio Dep. 52–53).

### II. Preliminary Matters

On April 6, 2009, Magistrate Judge Lynch denied Plaintiffs motion to compel, requesting further information in answer to interrogatories (D.E. No. 15). The same day, Plaintiff filed an objection to Magistrate Judge Lynch's denial. (D.E. No. 16). This objection was incorrectly docketed as a "Memorandum of Law,"

which prevented it from coming to the Court's attention in a timely manner (D.E. No. 16). A review of the motion to compel (D.E. No. 12), however, shows no error on Judge Lynch's part. Magistrate Judge Lynch determined in his Order that Plaintiff's Requests for Admissions and Interrogatories were worded in such a way as to inappropriately "in some fashion, define what is or is not 'enterprise coverage'" and that Defendants responded adequately and reasonably "in light of the questions as worded." (D.E. No. 15).

An examination of the Motion to Compel reveals the source of Judge Lynch's concerns. Plaintiffs Requests for Admissions asked Defendants to admit that JUI employed "two or more individuals who, in performing their job duties, handled or worked on goods [or materials] that were produced for commerce." Defendants denied this. To admit it would have been tantamount to admitting enterprise coverage, as discussed *infra* Sec. IV. Then, in Interrogatories, Plaintiffs referred back to those Requests for Admissions and asked that Defendants list all goods or materials handled or worked on by employees, their state of origin, and the factual basis for the assertion that the materials were not produced for commerce.

▪ The Court gathers that Judge Lynch's concern about the wording stems from the fact that the Interrogatories explicitly related back to Requests for Admissions that were worded in terms of enterprise coverage. Manufacturers and wholesalers that supply goods and materials often produce those items "for commerce," as defined by the FLSA, giving rise to enterprise coverage. When the items they manufacture and supply come to rest in local retailers, and businesses such as Defendant purchase those goods

and materials from the local retailers for local uses, the purchaser business is not handling those items "for commerce" as defined by the FLSA. *See Scott v. K.W. Max Investments, Inc.*, 256 Fed.Appx. 244, 248 (11th Cir.2007); *Polycarpe v. E & S Landscaping Service, Inc.*, 572 F.Supp.2d 1318, 1321 (S.D.Fla.2008). This is true regardless of the state of origin of the items and regardless of the fact that the items may have traveled in interstate commerce to reach the local retailers. *Id.* Thus, as Magistrate Judge Lynch found, Defendants' response, which did not delve into the sources of the items they bought from local retailers or into legal arguments regarding why locally purchased goods were "for commerce," was reasonable.

▪ Similarly, the Court does not find clear error in Judge Lynch's failure to require Defendants to list every single good or material used by every single employee. Such a list would be extremely large, ranging from paper clips to gasoline, and it would have little bearing on the "for commerce" portion of enterprise liability. The fact that employees of a company use credit cards, make telephone calls, utilize the internet, or buy gasoline will not in itself qualify the company for enterprise coverage. *Polycarpe*, 572 F.Supp.2d at 1321. Even some out-of-state purchases, such as "a local business's occasional or sporadic ordering of office supplies from an out-of-state vendor[, are] not sufficient to confer jurisdiction under the FLSA." *Williams v. Signature Pools & Spas, Inc.*, 615 F.Supp.2d 1374, 1380 (S.D.Fla.2009). Plaintiffs did not ask where or how Defendants purchased, leased, or manufactured the goods and materials their employees used. Rather, Plaintiffs asked what those materials were, where they originated, and how Defendants factually justified denying

that they were produced "for commerce." The Court presumes, from Judge Lynch's ruling, that he was concerned that requiring the Defendants to answer the question in the way which Plaintiff's sought to compel would require Defendants either to reveal their legal arguments or to risk contradicting themselves. Thus, the Court does not find clear error in his ruling.

The Court notes, finally, that in Defendant Coniglio's sworn declaration, he categorically asserted that none of the products, machines, tools, and other goods used by Defendants' employees were ordered or purchased from out of state. (Coniglio Decl. ¶ 8). Instead, he asserted that all of those products, machines, tools, and other goods were purchased or leased in Florida. *Id.* He did not tailor or restrict this statement to any particular type of employee, which is consistent with Defendant's responses to the Requests for Admissions. As Defendants have pointed out, Plaintiff has deposed Defendant Coniglio, during which Plaintiff had the opportunity to and did to a certain extent clarify what materials JUI used and where they were obtained. Thus, the absence of a more comprehensive Interrogatory response did not prejudice Plaintiff.

Coniglio testified that JUI purchased or leased all their tools and supplies at local area Florida retailers. (Coniglio Decl. ¶¶ 7, 8), Coniglio testified that none of JUI's employees engaged in interstate commerce as part of the business and that JUI only worked and solicited clients in the South Florida area. (Coniglio Decl. ¶¶ 9, 10). JUI's clients, rather than JUI, provided the cable that was buried. (Coniglio Decl. ¶ 12).

### III. Standard

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285 (11th Cir.1997), and "must resolve all reasonable doubts about the facts in favor of the non-movant." *Un. of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.,* 894 F.2d 1555, 1558 (11th Cir.1990).

"By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. 2505. Likewise, a dispute about a material fact is a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252, 106 S.Ct. 2505.

"For factual issues to be considered genuine, they must have a real basis in the

record.... [M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England,* 432 F.3d 1321, 1326 (11th Cir.2005). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. In those cases, there is no genuine issue of material fact "since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. 2548.

### IV. Analysis

The FLSA applies to any employer engaged in an "enterprise engaged in commerce or in the production of goods for commerce."[1] 29 U.S.C. § 207(a)(1). Employers who qualify for this "enterprise coverage" must pay employees one and one-half times their regular pay rate for time worked in excess of 40 hours per week. *Id.*

The FLSA defines an "enterprise engaged in commerce or in the production of goods for commerce" as an enterprise that "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and that "is an enterprise whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A). It is undisputed that Defendant meets the gross sales requirement of $500,000. Thus, the issue before this Court concerns the first requirement for enterprise coverage, namely whether the JUI had at least two employees regularly and recurrently engaged in commerce. *See* 29 C.F.R. § 779.238.

■■■ In determining "what constitutes 'engaged in commerce' for enterprise coverage, courts may look to the definitions used in individual coverage cases." *Lamonica v. Safe Hurricane Shutters, Inc.,* 578 F.Supp.2d 1363, 1366 (S.D.Fla.2008) (citing *Scott v. K.W. Max Investments, Inc.,* 256 Fed.Appx. 244, 248 (11th Cir. 2007)). Those cases show that "for an employee to be 'engaged in commerce' under the FLSA, he must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, e.g., transportation or communication industry employees, or (ii)

---

**1.** The FLSA also applies to any employee who is "engaged in commerce or in the production of goods for commerce," regardless of whether the enterprise that employs him is engaged in commerce under the statute. 29 U.S.C. § 207(a)(1). This is called "individual coverage" rather than "enterprise coverage." *Ares v. Manuel Diaz Farms, Inc.,* 318 F.3d 1054, 1056 (11th Cir.2003). In this case, however,

it is undisputed that Plaintiff was not "directly participating in the actual movement of persons or things in interstate commerce" and does not qualify for "individual coverage." *See Thorne v. All Restoration Servs., Inc.,* 448 F.3d 1264, 1266 (11th Cir.2006). Thus, this analysis will concern itself exclusively with enterprise coverage.

by regularly using the instrumentalities of interstate commerce in his work, e.g., regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Thorne v. All Restoration Services, Inc.,* 448 F.3d 1264, 1267 (11th Cir.2006) (citing 29 C.F.R. § 776.23(d)(2)). An employee is "engaged ... in the production of goods for commerce" if his or her "work is closely related and directly essential to the production of goods for commerce." *Thorne,* 448 F.3d at 1268 (citing 29 C.F.R. § 776.18); *see also Scott,* 256 Fed.Appx. at 248.

■■ The term "goods" in this analysis does not encompass "goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof." 29 U.S.C. § 203(i). An employer's purchase of goods from retail stores located within the state to use within the state, such as buying materials from a local Home Depot for local construction work, does not qualify as production of goods for commerce under the FLSA. *Scott v. K.W. Max Investments, Inc.,* 256 Fed.Appx. 244, 248 (11th Cir.2007); *see also McLeod v. Threlkeld,* 319 U.S. 491, 493, 63 S.Ct. 1248, 87 L.Ed. 1538 (1943) ("those employees who handle goods after acquisition by a merchant for general local disposition are not [in commerce]"); *Johnston v. Spacefone Corp.,* 706 F.2d 1178, 1182 (11th Cir.1983) ("Congress's primary purpose in refusing to extend FLSA's coverage to its constitutional maximum was to leave regulation of 'local' business to the states"). On the other hand, any process, even a strictly local one, that is directly essential to the production of a good intended for interstate commerce, such as the research and development of a cordless telephone, does qualify as production

of goods for commerce under the statute. *Johnston,* 706 F.2d at 1182.

■ It is undisputed that the goods and materials JUI used in its business were purchased and used locally and that JUI did not do business outside Florida. The issue before this Court is whether the fact that JUI was burying cables that were manufactured and purchased by others and that would be connected to a communications network by others is sufficient to provide enterprise coverage.

■ "Where employees' activities have related to interstate instrumentalities or facilities, such as bridges, canals and roads, [courts] have used a practical test to determine whether they are 'engaged in commerce.' The test is 'whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity.'" *Mitchell v. Lublin, McGaughy & Associates,* 358 U.S. 207, 212, 79 S.Ct. 260, 3 L.Ed.2d 243 (1959) (internal citations omitted). In this case, there is no evidence that JUI burying the cables in question was vitally related to their functioning, rather than simply a practical or aesthetic decision to keep from stringing them along the ground or through the air. Further, there is no evidence that burying the cables was engaging in any "occupation directly essential to the production thereof." 29 U.S.C. § 203(j); *see also Johnston,* 706 F.2d at 1180. JUI did not connect the cables or do anything other than place them in ditches and cover them.

The court in *Milbourn v. Aarmada Protection Systems 2000, Inc.,* 588 F.Supp.2d 1341 (S.D.Fla.2008) dealt with facts substantially similar to those in this case. In *Milbourn,* the defendant, a security com-

pany, wired and set up cable television, internet, and telephone lines while installing the components of a security system in local homes. *Id.* at 1342–43. The security company defendant would connect the telephone lines in order for the alarms to function properly. *Id.* at 1343. Some of the security company's customers were engaged in interstate commerce. *Id.* at 1346. The *Milbourn* court noted that an independent contractor was not engaged in the production of goods for commerce based upon the interstate commerce activities of its customers. *Id.* (citing *Thorne,* 448 F.3d at 1268). The court concluded that, despite its work with telephone and cable lines, the security company defendant was "not engaged in commerce or in the production of goods for commerce and is therefore not subject to the FLSA." *Id.*

JUI, like the defendant in *Milbourn,* did local work with materials purchased locally. If anything, JUI's role in connection with the cables was even less essential than the role of the *Milbourn* defendants. Thus, guided by the decision in *Milbourn,* the Court concludes that such activity does not provide enterprise coverage.[2]

■ Individual Defendant Coniglio's liability as an officer is only derivative of JUI's liability, so Coniglio is entitled to summary judgment as well. *See Milb-*

*ourn,* 588 F.Supp.2d at 1346 (liability of corporate officer derivative of liability of corporation; where corporation is not subject to suit, officer is entitled to summary judgment) (citing *Patel v. Wargo,* 803 F.2d 632, 637 (11th Cir.1986)). It is hereby:

**ORDERED and ADJUDGED that**

1. Defendants' Motion for Summary Judgment (**D.E. No. 27**) is **GRANTED.** A Final Judgment shall be entered by separate order.

2. Plaintiff's Motion for Partial Summary Judgment (**D.E. No. 26**) is **DENIED.**

---

2. Plaintiff has raised a novel argument to distinguish *Milbourn.* Specifically, Plaintiff argues that there are several distinct analyses that may be applied in order to establish enterprise coverage, such as the "supplies analysis" and the "production analysis." Plaintiff argues that the "supplies analysis" is a separate and distinct means of establishing coverage than the "production analysis," which Plaintiff argues applies in this case. More particularly, Plaintiff is arguing that cases that analyze where a company receives its goods and materials do not apply to his case. Rather, he argues, only cases that analyze what a company produces apply. Despite the arguable cleverness of Plaintiffs assertion, this Court has not found case law to support Plaintiffs theory of separate and dis-

tinct "supply" and "production" analyses of enterprise coverage. Furthermore, the supposed "production" cases Plaintiff cites are distinguishable from this one in ways that *Milbourn* is not, in that the connection to interstate commerce is clear. *See Mitchell v. Lublin, McGaughy & Associates,* 358 U.S. 207, 212, 79 S.Ct. 260, 3 L.Ed.2d 243 (1959) (plaintiffs "engaged in commerce" when they helped develop plans and specifications for the construction and repair of airports, bus terminals, and television and radio installations); *Johnston v. Spacefone Corp.,* 706 F.2d 1178, 1182 (11th Cir.1983) (plaintiff "engaged in commerce" when he worked to develop and market a cordless telephone).